IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZIM EREBARA, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | CIVIL ACTION |
| | : | |
| KENNETH ELWOOD, et al. | : | NO. 02-3650 |
|     Respondents. | : | |

## ORDER

AND NOW on this _____ day of _____, 2002, upon consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.

_____
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZIM EREBARA, | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| KENNETH ELWOOD, et al. | : | NO. 02-3650 |
| Respondents. | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
PETITIONER'S WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendants, the District Director of the Immigration and Naturalization Service ("the Service") and the Attorney General of the United States, files this response in opposition to the petitioner's writ of habeas corpus.

**I.   BACKGROUND**

This is a habeas petition brought under 28 U.S.C. § 2241 by Nazim Erebara, a native and citizen of Macedonia. He entered the United States illegally through New York, using a fake Italian passport, on January 25, 1992. (See Exhibit 1). Erebara lived for a time in Gibsonia, Pennsylvania, working as a cook. (Id.). On June 4, 1993, Erebara appeared at the Service's district office in Pittsburgh, Pennsylvania, where Service officials created a "Record of Deportable Alien." (Id.). On July 14, 1993, the

Service issued an Order to Show Cause and Notice of Hearing, advising Erebara that he was deportable from the United States pursuant to Sections 241(a)(1)(B) and (A) of the Immigration and Nationality Act ("the Act") because he had overstayed his authorization to be in the country as a nonimmigrant visitor, and because he had procured his entry to the country by fraud. (See Exhibit 2).

On July 12, 1994, Erebara applied for asylum in the United States. (See Exhibit 3). On October 5, 1994, Erebara appeared for a hearing before an Immigration Judge. The Immigration Judge denied Erebara's application for asylum, as well as his application for withholding of deportation (a similar type of claim to asylum). (See Exhibit 4).[1] The Immigration Judge granted Erebara's application for voluntary departure from the United States until June 1, 1995, with an alternative order of deportation to Macedonia if he did not voluntarily depart. (See Exhibit 4). Erebara appealed the ruling to the Board of Immigration Appeals. The Board affirmed the Immigration Judge's decision, finding that Erebara had failed to demonstrate that he harbored a well-founded fear of persecution necessary to establish an asylum claim. (See Exhibit 5). The Board again granted Erebara voluntary departure from the United States until June 1, 1995.

---

[1] Mr. Erebara's immigration file apparently does not contain the transcript of the Immigration Judge's written decision; only the Order.

Erebara did not voluntarily depart from the United States, and remained illegally in the United States despite the final order of removal pending against him. The Service had no further record of Erebara until he moved to reopen his immigration proceedings in or about June 6, 2001. Represented by counsel (not current counsel), Erebara sought to reopen his proceedings, arguing that changed country conditions warranted a new hearing on his application for asylum. On January 18, 2002, the Board of Immigration Appeals denied his motion, finding that Erebara had not presented a prima facie case for reopening based on changed country conditions. (See Exhibit 6, pp. 1-2). The Board also denied Erebara's request to reopen proceedings in order to seek relief under the Convention Against Torture ("CAT") as untimely pursuant to 8 C.F.R. § 208.18(b)(2)(i) (an individual with an order that became final before March 22, 1999 who seeks relief under the CAT must have filed his motion on or before June 21, 1999). (See Exhibit 6, p.2). Erebara, again represented by counsel, filed a motion to reconsider the Board's January 19, 2002 decision. The Board denied the motion on March 20, 2002.

According to the plaintiff's petition, Erebara was picked up by the Service on "May 31, 2002 during a recent sweep of Muslim men following the tragedy of September 11, 2001" and incarcerated at York County Prison. Erebara filed this petition seeking an emergency stay of his removal from the country, which the Emergency Judge granted on June 7, 2002. Erebara is currently detained at the Berks County Prison. The Service has a valid travel document for Erebara (his Macedonian passport) and is prepared to carry out his removal once this litigation is resolved and the stay lifted.

Erebara's arguments fall into three categories. First, he claims that he is being illegally detained by the Service while awaiting his removal from the country.[2] Second, he claims he is entitled to asylum and relief under the CAT. Third, Erebara claims he is entitled to seek a form of relief known as "cancellation of removal," notwithstanding the fact that he is not in removal proceedings and has a final order of removal in effect from 1995. For the reasons discussed below, none of these arguments has any merit.

## II.    LEGAL ARGUMENT

### A.    Erebara's Detention is Lawful Under Both The Act and the Supreme Court's Decision in Zadvydas v. Davis.

With regard to his detention, Erebara cannot establish that his custody is illegal or violates the Constitution in any way. Under the Immigration and Nationality Act ("the Act"), the Service has 90 days (the "removal period") to carry out an order of removal. 8 U.S.C. § 1231(a)(1)(A). The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Detention is mandatory during the removal period. 8

---

[2] Erebara also filed a separate motion on July 22, 2002 seeking an Order from this Court releasing him from custody. The Service's response to this motion is incorporated in the response to the habeas petition.

U.S.C. §1231(a)(2).

In Erebara's case, for all practical purposes, the removal period began on May 31, 2002, the date the Service took him into custody. This is the first opportunity the Service would have had to carry out his removal, since he ignored the order to depart at the time it became administratively final on June 1, 1995 (when he failed to voluntarily depart). However, now that there is a judicial stay in place as of June 7, 2002, the removal period has essentially been halted. See 8 U.S.C. § 1231(a)(1)(B)(ii)(if a court issues a stay in response to a habeas petition, the removal period starts when the stay is lifted).

Cases involving the detention of aliens with a final order of removal are governed by the Supreme Court's decision in Zadvydas v. Davis, 121 S.Ct. 2491 (2001). In Zadvydas, the Supreme Court held that the 90 day statutory removal period and detention for an alien in deportation proceedings may be extended by the Attorney General for up to six months if necessary. 121 S.Ct. at 2505. Indeed, the Court did not even limit the removal period to a maximum of six months. Rather, as the Court stated: "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

In this case, even though the removal period has been tolled due to the judicial stay, the principles of Zadvydas still apply. We are still within the initial

statutory mandatory detention period for aliens with a final order of removal, and well within the six month period established by the Supreme Court in Zadvydas. The Service has a valid travel document for Erebara and will be able to remove him without delay once the litigation he has instigated is resolved. Erebara's detention is clearly consistent with Congress' intent under the statute, and constitutional under Supreme Court precedent.[3]

Following the 90 day removal period, the Act provides that an alien may be detained at the discretion of the Attorney General. 8 U.S.C. § 1231(a)(1)(c), (a)(2), and (a)(3). The regulations pertaining to this section of the Act further state:

> The district director may continue in custody any alien . . . removable under [8 U.S.C. §] 1227(a)(2). . . or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an

---

[3] Erebara protests his detention based on equitable factors relating to his three small children. While we do not minimize the difficulty of this situation for his family, such equities do not set Erebara apart from a high percentage of aliens in his situation. Erebara has made a request for parole to the District Director and this request is still pending. However, if the District Director chooses not to release Erebara, this discretionary decision is not reviewable by the Court on a habeas petition. See 8 U.S.C. Section 1252(a)(2)(B)(ii).

>       amount sufficient to ensure the alien's appearance for
>       removal.

8 C.F.R. § 241.4(a). In this case, because of the judicial stay, the District Director is currently considering his request for parole, even though the 90 day period has not yet expired. Erebara will be entitled to periodic custody reviews if he remains detained.

>   B.  <u>This Court's Scope Of Review On Habeas is Legality And There Was Nothing Illegal About The Board's Finding That Erebara Did Not Qualify for Asylum or Relief Under the Convention Against Torture.</u>

With regard to his asylum claim and relief under the CAT, petitioner likewise has no claim for habeas relief. Petitioner's remedy if he was dissatisfied with the Board's decision on his asylum and CAT claims was to file a petition for review with the Third Circuit Court of Appeals. 8 U.S.C. § 1252(a)(1) and (b). Erebara did not exhaust his administrative remedies and, as such, the District Court has no authority to review the Board's decisions relating to asylum on habeas review. See <u>Marrero v. INS</u>, 990 F.2d 772, 778 (3d Cir. 1993) ("it is well established that an order of deportation . . . shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations.").

In January, 2002, the BIA found that Erebara had not presented sufficient evidence of changed circumstances relating to his petition for asylum to warrant a reopening of his removal case. This determination was based on the BIA's assessment of the facts of the case. Judgments not to reopen are discretionary, and are not reviewable

on habeas. The law is that habeas courts are not to engage in evidentiary "second guessing" of factual determinations in the immigration context, but are limited to "purely legal" questions. Bowrin v. INS., 194 F.3d 483, 490 (4th Cir. 1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited"); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001)(federal jurisdiction over § 2241 petitions does not extend to review of factual or discretionary determinations); Carranza v. INS, 277 F.3d 65 (1st Cir. 2002)("Federal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated");

To the extent Erebara is alleging abuse of discretion, that is not the standard on habeas review. In order to prevail on habeas, Erebara must point to illegality in the BIA's decision and he has made no such showing here. Absent a violation of law, Erebara's petition must be dismissed. See St. Cyr v. INS, 121 S.Ct. 2271, 2278 (2001) ("scope of review on habeas is considerably more limited than on APA-style review"); and at 2282-83 (distinguishing between a question of eligibility for discretionary relief, on the one hand, and "fact-based challenges to executive official's exercise of discretion," noting that only the former involves cognizable question of pure law).

In any event, Erebara has now filed a second motion to reopen his immigration proceedings with regard to his request for asylum. Erebara claims that the lawyer who handled the 2001 motion to reopen inadequately represented him. Erebara's

-8-

current attorneys filed the new motion to reopen based on changed country circumstances on or about July 26, 2002. This motion to reopen is pending with the Board of Immigration Appeals. Again, until the Board makes a decision on the motion to reopen, there is no jurisdiction to hear a claim related to asylum or CAT at this time, and any such appeal would be on a petition for review to the Third Circuit Court of Appeals.[4]

    C.    <u>Erebara Is Not Entitled To Cancellation Of Removal and the Stop-Time Rules Prevent Him From 10 Years of Continuous Presence In The Country</u>

Under the Act in effect since 1997, certain removable aliens can apply for a form of relief known as "cancellation of removal." 8 U.S.C. § 1229b. Aliens in removal proceedings who are not lawful permanent residents would apply under Section 240A(b) of the Act. 8 U.S.C. § 1229b(b). The provision states that the Attorney General may cancel removal of an alien who is deportable from the country if the alien (a) has been physically present in the United States for a continuous period of 10 years immediately

---

[4] We do not address the merits of petitioner's second motion to reopen in this forum, but note that when, as here, such a petition makes claims of previous ineffective assistance of counsel, the Board generally requires the petitioner to follow the requirements in <u>Matter of Lozada</u>, 19 I.& N. Dec. 637, 1988 WL 235454 (BIA 1988), <u>aff'd</u>, 857 F.2d 10 (1st Cir. 1988). Among other requirements, an alien must submit evidence that the allegedly ineffective counsel was informed of the allegations and allowed to respond, and an indicate that a complaint has been lodged with the bar, or reasons explaining why not. See <u>Lata v. INS</u>, 204 F.3d 1241, 1246 (9th Cir. 1999). There is no evidence that petitioner has met the <u>Lozada</u> requirements.

preceding the date of such application; (b) has been a person of good moral character during that period; (c) has not been convicted of certain criminal offenses; and (d) establishes that his removal would result in exceptional and extremely unusual hardship to certain U.S. citizen relatives.  8 U.S.C. § 1229b(b)(1)(A)-(D).

At the time of Erebara's deportation proceedings in 1994, there was a similar form of relief available, known as "suspension of deportation."  It required seven continuous years in the country.  At the time of Erebara's proceedings, he had only been in the country for less than three years and clearly was not eligible for this type of relief.

Erebara now claims that he is entitled to cancellation of removal because he has been in the country for 10 years.  His claim ignores the obvious point that he has acquired his 10 years in the country only his illegal presence for 7 years past his voluntary departure date.  This is exactly the kind of result that Congress sought to end by passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L.No. 104-208, Div. C, 110 Stat. 3009-546 (1996).  In repealing "suspension of deportation" and replacing it with "cancellation of removal," Congress made several changes.  Among other changes which made it more difficult to obtain relief, Congress increased the time for continuous presence to ten years, and created a "stop time" rule.  The stop time rule provided that the period of continuous presence in the United States would be deemed to end when the alien was served with a notice to appear.  See Section 309(c)(3) of IIRIRA; Angel-Ramos v. Reno, 227 F.3d 942, 945 (7th Cir. 2000).

Before IIRIRA, deportation proceedings were commenced with orders to show cause. Under IIRIRA, Congress changed the name to removal proceedings, and the document commencing the proceedings was called a "notice to appear." This distinction caused some confusion with regard to the stop-time rule, and Congress clarified the issue in the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"). In Section 203(a) of NACARA, Congress made it clear that the stop-time rule applied to orders to show cause, as well as notices to appear. Angel-Ramos v. Reno, 227 F.3d at 947. See also Sibanda v. INS, 282 F.3d 1330, 1335 (10th Cir. 2002) ("Congress intended to prevent aliens from continuing to accumulate time toward the continuous residency requirement after INS had issued an order to show cause to an alien.").

Erebara nonetheless insists that he is immune from the effect of the stop-time rule because the rule only applies to aliens who were subject to a Notice to Appear and not to those who were served by an Order to Show Cause. This assertion is clearly belied by the plain language of NACARA, which explicitly states that "orders to show cause have the same "stop-time" effect as notices to appear." Ram v. INS, 243 F.3d 510, 515-16 (9th Cir. 2001) (quoting 143 Conf. Rec. S12265-01, at S12266 (1997), available in 1997 WL 693186 (Cong. Rec.)). The court in Ram noted that six other circuits and the BIA concurred with this conclusion. 243 F.3d at 516. See e.g. Angel-Ramos v. Reno, 227 F.3d 942, 947 (7th Cir. 2000); In re Nolasco-Tofino, Int. Dec. 3385, 1999 WL 218466 (BIA 1999) (en banc).

Moreover, Erebara ignores the fact that he cannot receive cancellation of

removal for the fundamental reason that he is not in removal proceedings. Erebara correctly points out that Section 309(c)(3) of NACARA provided that in certain circumstances, the Attorney General could exercise his discretion to close an alien's deportation proceedings, and start over with a Notice to Appear in a removal proceeding (this process is known as "repapering"). However, this provision only applies to an alien where no final administrative order had been entered. See Sherifi v. INS, 260 F.3d 737, 739 (7th Cir. 2001); see also Memorandum regarding Administrative Closure of EOIR Proceedings for Non-Lawful Permanent Resident Aliens Eligible for Repapering, p.2 (attached as Exhibit 9). Since Erebara had a final order, he is not eligible for "repapering" and cannot apply for cancellation of removal. See Rojas-Reyes, 235 F.3d 115, 125 (2d Cir. 2000)(Congress' decision to exclude from eligibility for repapering those cases where a final order of deportation has been entered is not unconstitutional but rather serves the legitimate purpose of saving resources).

Erebara also claims that retroactive application of the stop-time rule is unconstitutional. However, this argument clearly fails as the Third Circuit has already held that the stop-time provision is constitutional. See Pinho v. INS, 249 F.3d 183, 189-90 (3d Cir. 2001); Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002); see also Rojas-Reyes v. INS, 235 F.3d 115, 123 (2d Cir. 2000); Ram v. INS, 243 F.3d 510, 517 (9th Cir. 2001); Sibanda v. INS, 282 F.3d 1330, 1334 (10th Cir. 2002). Moreover, the statute is not being applied retroactively to him. Erebara has never sought cancellation of removal, and in any event, simply is not entitled to such relief because he already has a

final order of removal. There is no authority for his assertion that he gets to accrue "clean" time after his final order of removal, and now apply for cancellation of removal, simply because he ignored his voluntary departure date and final order.[5]

---

[5] This case presents a typical example of how delay favors the alien whom the Service is trying to remove. The goal of most aliens in the United States, especially those in removal proceedings, is to remain in the country. The Supreme Court recognizes as axiomatic that the way to remain is to prolong or delay the removal proceedings, by repetitive filings, multiple motions to reopen, or evading the process. Delay sufficiently and the alien will acquire "equities" such as petitioning relatives, or eligibility for a waiver after long-term illegal residence, or amnesty, or some other change in facts or law. See e.g. INS v. Doherty, 502 U.S. 314, 323 (1992) ("Every delay works to the advantage of the deportable alien who wishes to remain"); Shaar v. INS, 141 F.3d 953, 956-57 (9th Cir. 1998) (object of aliens and their lawyers is to "inject as much delay as possible into the proceedings"). It is important not to lose sight of the fact that any equities Erebara has built up are the result of his prolonged illegal stay in this country. He should not be rewarded by being granted a remedy to which he clearly is not entitled.

## III. <u>CONCLUSION</u>

Petitioner Erebara cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

Dated: August    , 2002

_____
SUSAN R. BECKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8310 Telephone
(215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the ___ day of August, 2002, I caused a true and correct copy of the foregoing Government's Response to Petition for Writ of Habeas Corpus to be served by Federal Express, postage prepaid, upon the following:

>David Oltarsh, Esquire
>Oltarsh & Associates, P.C.
>1375 Broadway, Suite 2102
>New York, NY 10018

_____
Susan R. Becker