IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZIM EREBARA, | : | |
|    Petitioner | : | |
| | : | |
|    v. | : | CIVIL ACTION |
| | : | |
| KENNETH ELWOOD, et al | : | NO. 02-3650 |
|    Respondents | : | |

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION
<u>RELEASE FROM DETENTION</u>**

     Mr. Erebara is not subject to mandatory detention and should be released forthwith. The Immigration Service is misconstruing the applicable case law and statute in an attempt to hold the petitioner in detention without the right to judicial review.

     The Immigration Service argues that Mr. Erebara is within the "removal period" in which the Service has ninety days to effectuate the alien's removal from "the latest of three points: the date the order becomes administratively final, the date of any reviewing court's final order; or the date the alien is released from criminal confinement". (Respondent's response at p.4 quoting 8 USC Sec 1231(a)(1)(B)(i)-(iii).) We are well past that ninety day period. Mr. Erebara's final order was issued, under the Immigration Service's recitation of facts, in 1995. The Immigration Service has no right to continue to detain him without an individualized consideration of his entitlement to release.

     In deportation proceedings, an alien is generally entitled to bond. Section 242(a)(1), 8 U.S.C. section 1252(a)(1). The Immigration and Nationality Act required that where a final order of deportation was made the Attorney General had only six months from the date of the order or from completion of judicial review to effect the alien's deportation. 8 U.S.C. section 1251(c). This was certainly the case in 1995 when Mr. Erebara's deportation order became final. See Kurzban's Immigration Law

Sourcebook 2nd Ed., American Immigration Law Foundation (1991) at 109 citing H.R. Rep. No. 1365, 98th Cong., *reprinted in* 1952 U.S. Code Cong. & Admin. News 1653, 1713.  Indeed, before IIRAIRA, the Attorney General was directed to effect a deportable alien's departure within six months of a deportation order becoming administratively final or the final order of the court reviewing the deportation order.  INA section 242(c), 8 U.S.C. section 1252(c)(prior to the 1996 amendments).  The Act later designated the "removal period" as the 90-day period following the date of the order of removal, or the date the alien is released from confinement for some reason other than the immigration process, whichever is later.  INA section 241(a)(1), 8 U.S.C. 1231(a)(1).

This of course is in contrast to aggravated felons who are covered by specific rules and mandatory detention. INA section 236(c)(1), 8 USC section 1226(c)(1);  Even before the passage of AEDPA and IIRAIRA, a non Legal Permanent Resident alien who was classified as an aggravated felon was required to be taken into custody without bond. See Kurzban at 109, 111 and 114 citing 8 U.S.C. 1252(a)(2). [1]  This provision did not apply to other aliens.

The Immigration Service tries to fit the facts into a scenario by which it can maintain the detention of this non-criminal alien without any manner of judicial review of the reasonableness of that detention.  It equates the applicant with aggravated felons.  Even *Zadvydas v. Davis*, the leading case on mandatory detention, concerned an alien detained pursuant to mandatory detention rules as an aggravated felon. 533 U.S. 678, 121 S.Ct. 2491, 2501, 150 L.Ed.2d 652 (2001)(consistent with due process, aliens admitted to

---

[1] The Immigration has a history of attempting to eliminate individualized determinations for bonds and judicial review thereof.  For example, prior to the Immigration Act of 1990, there was no bond available for an aggravated felon.  The constitutionality of the statute was successfully challenged; Kellmon v. District Director, 750 Supp. 625 (S.D.N.Y. 1990), *rel'd decision* 1991 WL 19849 (S.D.N.Y. 1991)(statute violates procedural due process); Joe v. Thornburgh, __ F.Supp. ___, 1990 WL 1674457, Civ. Action No. 90-12313-Z(D. Mass. Oct.2 26, 1990)(same); Hernandez –Highsmith v. Smith, __ F.Supp.__, C90-1555-R(W.D. Wash. Nov. 15, 1990)(same);  Probert V. U.S. I.N.S., 750 F.Supp. 252 (E.D. Mich. 1990) *aff'd by* 954 F.2d 1253 (6th Cir. 1992); Paxton v. U.S. I.N.S., 745 F.Supp. 1261 (E.D. Mich. 1990); Agunobi v. Thornburgh, 745 F.Supp. 533 (N.D. Ill. 1990); Hunnetti v. Thornburgh, __ F.Supp. ___, Civ. No. 90-C-4169 (N.D. Ill. Aug. 31, 1990); Leader v. Blackman, 744 F.Supp. 500 (S.D.N..Y. 1990).

the United States and subject to a final order of removal may only be detained under current detention provisions for a reasonable period and 'does not permit indefinite detention' by the Immigration Service. Id at 689.)

Without any legal support, the Immigration Service argues that "for all practical purposes, the removal period began on May 31, 2001, the date the Service took [Erebara] into custody", claiming that this was the first opportunity to effectuate the removal. This is untrue: the removal period under the plain meaning of the statute was at the time when the order became administratively final – there was no reviewing court case, and the alien, Mr. Erebara, was not released from criminal confinement. That time occurred in 1995. There is no explanation of why the removal could not have been carried out during the seven preceding years, and no applicable law cited by the government that permits them to extend the time to allow them seven years later and thereafter detain Mr. Erebara without review. The respondent's address has been known to the Immigration Service since his deportation proceedings began almost ten years ago. It has remained the same since the Immigration Court ordered him removed in 1994. When the Immigration Service decided recently to pursue these long-outstanding orders of deportation, it was easily able to locate Mr. Erebara and take him into custody. Although declaring that "for all practical purposes" he could be removed now and not previously there in no explanation for why he could not have been previously removed. The law in effect at the time the order became final required the Attorney General to effectuate removal within six months. The ninety day removal period follows the date of removal, as specified in INA 241(a)(1), and even stated by the Defendant in its own Response at pgs. 4-5. The INS recently denied the applicant request for an individualized hearing claiming that the "removal period has not expired" using *Zadvydas* case about the indefinite detention of an aggravated felon subject to mandatory detention, as blanket justificiation to deny all other aliens with a final order of deportation a right to a bond hearing. In that case the

alien was taken from custody on a criminal matter into INS custody and could not be returned to his native country.  A copy of that denial is attached hereto as Exhibit "A".

Mr. Erebara's removal period began some seven years ago after the Immigration Service knew that he had a final order but failed to remove him.  The Immigration Service is now claiming that it has the right, seven years after the final order of deportation, to hold Mr. Erebara in detention without a particularized determination of his right to release solely because it decides that it does not want him to be released.

The Immigration & Naturalization Service consistently holds itself out as having the unfettered right to detain aliens without their having any right to challenge their detention.   The Supreme Court disagreed with the INS' interpretation that it has an unfeddered and non-reviewable right to mandatory detention of criminal aliens following final orders of deportation, holding that due process required an individualized hearing in a reasonable time, viz, within six months of the criteria set forth in INA section 1231, the removal period.Id.  Not all aliens are within this class.   The Third Circuit itself likewise does not favor the INS' pursuit of the wholesale detention of aliens without judicial review and recently held that mandatory detention of aliens violates their due process rights unless they are afforded the opportunity for an individualized custody and bond hearing to address the necessity of detention.  Patel v. Zemski, 275 F.3d 299 (3rd Cir. 2001).  The *Patel* case was about a detained woman who, like Erebara, had minor children; the INS claimed the right to hold her without review.

The Immigration Service wishes to hold aliens without their having any individualized consideration for release.  These mandatory detention cases issues revolve around aggravated felons.  Mr. Erebara, converesely, has never committed a crime and is not a flight risk not any possible danger to the community, was given a final order years ago and the INS could well have effectuated his deportation but chose not to.  There is no grounds under the law that the INS can continue to detain him without an individualized hearing regarding the merits of his release.  His continued detention is constitutionally

suspect. Immigration laws are "subject to constitutional limitations, including due process constrains." Id. at 308 (citing Zadvydas, 121 S.Ct. at 2501, 150 L.Ed.2d 652 (2001). Mr. Erebara is the sole support for his three very young American citizen children who are now suffering terribly without any pecuniary means since their father was taken into custody nearly two months ago. It is imperative that during these proceedings he be permitted to return to work as a pizza-maker where he is considered an essential employee. He is highly regarded in his community and is an essential worker to his employer. He does not pose a risk of flight, nor is he by any stretch of the imagination a danger to the community.

    WHEREFORE, the petitioner respectfully requests that his request for release be granted or at the very least that an individualized custody and bond hearing be held on the merits.

Respectfully Submitted,

David E. Oltarsh
OLTARSH & ASSOCIATES, P.C.
Attorneys for the Petitioner
1375 Broadway, Suite 2102
New York, NY 10018
(212) 944-9420