IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZIM EREBARA, | : | |
|    Petitioner | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| KENNETH ELWOOD, et al | : | NO. 02-3650 |
|    Respondents | : | |

### PETITIONER'S REPLY IN SUPPORT OF HABEAS CORPUS RELIEF

    Mr. Erebara, a long-term resident of the United States, is entitled to habeas corpus relief and immediate release from detention. Mr. Erebara tried to regularize his status soon after his entry from his native Macedonia through his application for political asylum. This application was denied on October 5, 1994 and its appeal denied in April, 1995. He did not appeal to federal court.

    The Immigration Service, for over eight years since the service of the Order to Show Cause which commenced Mr. Erebara's deportation proceeding, has known about the defendant and his whereabouts. After the deportation order became final, it made no move to deport. At that time the Attorney General was directed to effect a deportable alien's departure within six months of a deportation order becoming administratively final or the final order of the court reviewing the deportation order. INA section 242(c), 8 U.S.C. section 1252(c)(prior to the 1996 amendments).[1] Also see Kurzban's Immigration Law Sourcebook 2nd Ed., American Immigration Law Foundation (1991) at

---

[1] The Act later designated the "removal period" as the 90-day period following the date of the order of removal, or the date the alien is released from confinement for some reason other than the immigration process, whichever is later. INA section 241(a)(1), 8 U.S.C. 1231(a)(1).

109 citing H.R. Rep. No. 1365, 98th Cong., *reprinted in* 1952 U.S. Code Cong. & Admin. News 1653, 1713.

During the eight years since the service of the Order to Show Cause, Mr. Erebara's family has grown; he now has three United States Citizen children, and developed stronger and deeper ties to this country.  He has worked industriously throughout the time working as a specialty cook making pizza, earning the respect and appreciation of his boss who considers him as a close friend.

Although the Service tries to paint a negative picture of respondent, its arguments are largely boiler-plate facts which fail to take into account the particularized events surrounding Mr. Erebara's situation.  The respondent left the former Yugoslavia in 1992, soon after the country disintegrated in 1991 which gave rise to Slobodan Milosevic in neighboring Montenegro-Serbia.  Mr. Milosevic came to power on the heels of ethnic scapegoating and calls for ethnic purity.

Mr. Erebara received no legal asssitance in filling out his claim for political asylum and he was unrepresented during his individual hearing in which he presented the merits of his claim.  His appeal was similarly filed and decided without the benefit of counsel; it was denied in April, 1995 when many parts of the former Yugoslavia were experiencing grave human rights violations and atrocious human rights conditions.  War was a threat throughout the region.   At that time, Slobodan Milosevic was busy promoting his non-Muslim version of the world, brutally repressing minorities and starting the initial stages of what later became "ethnic cleansing". The Department of State Report for 1995 paints a grim picture of the former-Yugoslavian state of Serbia-Montenegro:

> "The government's human right's record continued to be poor.  The police committed numerous serious human rights abuses, including carrying out and condoning torture, brutal beatings, and arbitrary arrest.  Police repression continued at high levels against the ethnic-Albanians of Kosovo and the Muslims of Sandzak and reflected a general campaign to keep the one-third of the

population who are not ethnic Serbs intimidated and unable to exercise basic human and civil rights. …"

Macedonia, like Montenegro-Serbia, had an ethnic-Albanian Muslim minority. Systematic serious harassment and discrimination of the ethnic Albanian population was commonplace in Macedonia and many feared a domino-effect of the ethnic-brutality and violence that was occurring next door in Serbia- Montenegro.

It was to this area of the world that the INS, at least on paper, was telling Mr. Erebara, an ethnic Muslim Albanian, to return – to go back and bring his family to an area in which ethnic Albanian Muslims, Mr. Erebara's ethnic background and religion, were being persecuted.

Counsel recently reviewed Mr. Erebara's claims, country conditions of Macedonia, and spoke with an expert on human rights in that region who opinioned that Mr. Erebara could face persecution because of facts particular to Mr. Erebara in combination with tensions between the ethnic groups made worse by the recent year-old escalation of violence in Macedonia.  Based on the possible threat of harm to the respondent, we moved to reopen his deportation case which had previously been presented without the assistance of counsel at the first level, and without competent counsel during a prior motion to reopen.

Although the INS makes light of the manner that Mr. Erebara came into custody, it was following the tragedy of September 11, 2002, and the sweep of Muslim men whom the INS turned over to the FBI for information gathering.  When it quickly became clear that Mr. Erebara had no intelligence to give, he was taken into custody for deportation on the long-outstanding deportation order.

The petitioner's motion to reopen his deportation case present enough facts to warrant that the issue be heard in a fact-finding hearing.  The Habeas is appropriate because the Immigration Service has every intention of imminently deporting the respondent and has indicated that it would deport the petitioner were no stay present.

3

## THE APPLICANT IS ENTITLED TO SUSPENSION OF DEPORTATION

The applicant is also entitled to suspension of deportation:   When the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRAIRA)[2], was enacted suspension applications were still being adjudicated even after IIRAIRA's enactment date which ended deportation hearings and commenced removal proceedings. The law that existence for deportation proceedings, and at the time that petitioner's deportation hearing occurred, time could continue to accrue, even after appeals and final orders of deportation.  Most of the new rules applied prospectively.  Due process concerns disfavor the retroactive application of laws.  See Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

Furthermore, the Immigration Service states no authority for why the accrual of time cannot begin anew after service of a charging document.  The INS knew the respondent's whereabouts but failed to carry it out his deportation despite being legally required to do so within six months.  Years passed during which time the petitioner and his family did indeed establish greater ties to this country, and has contributed to it while working industriously and raising his three American Citizen children.  Any prolonged delay, even if not condoned was certainly tolerated by the INS and it is just these circumstances that warrant the petitoner obtaining relief.

The government argues that the stop-time rule of NACARA[3] is intended to prevent individuals from accruing time to satisfy residency requirements of suspension of deportation and cancellation of removal after being placed in proceedings.  Congress has been concerned that individuals not unreasonably delay their removal proceedings in order to accrue time to satisfy the requirements of cancellation of removal.  Terminating physical presence upon the issuance of a notice to appear serves this goal.

---

[2] Illegal Immigration reform and Immigration Responsibility Act of 1996 (IIRAIRA)(enacted as Division C of the Omnibus Appropriations Act of 1997, Pub. L. No. 104-208, 110 Stat. 3009)
[3] Nicaraguan Adjustment and Central American relief Act, enacted as Title II of the District of Columbia Appropriations Act for Fiscal Year 1998, Pub. L. No. 105-100, 111 Stat. 2160 (nov. 19, 1997).

However, eight years have passed since the Order to Show Cause. The motive for allowing suspension of deportation or in the alternative cancellation of removal remains the same, to allow individuals with long term ties to this country and whose American citizen relatives would suffer to remain. That is certainly true in the case at bar.

We therefore respectfully request that the Court consider this response. The Order to Show Cause for the stay and the concurrent Habeas petition were drafted and executed in haste and in a time-conscientious manner, as the applicant feared his imminent deportation. The issues are significant and of major importance to Mr. Erebara and this reply is not substantially lengthy seeking to delay proceedings or cause injustice.

Mr. Erebara has been incarcerated since June, 2002; he is the sole support of his three U.S. citizen children who are now suffering exceptional pecuniary and extreme hardship.

WHEREFORE, we respectfully move this court to grant the habeas petition, releasing the petitioner from detention and permitting him to make an application for suspension of deportation.

    Respectfully Submitted,

    David E. Oltarsh
    OLTARSH & ASSOCIATES, P.C.
    Attorneys for the Petitioner
    1375 Broadway, Suite 2102
    New York, NY 10018
    (212) 944-9420

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZIM EREBARA, | : | |
|    Petitioner | : | |
| | : | |
|         v. | : | CIVIL ACTION |
| | : | |
| KENNETH ELWOOD, et al | : | NO. 02-3650 |
|    Respondents | : | |

**PETITIONER'S REPLY IN SUPPORT OF HIS MOTION**
**RELEASE FROM DETENTION**

     Mr. Erebara is not subject to mandatory detention and should be released forthwith. The Immigration Service is misconstruing the applicable law.

     The Immigration Service argues that Mr. Erebara is within the "removal period" which the Service has ninety days to effectuate the alien's removal from "the latest of three points: the date the order becomes administratively final, the date of any reviewing court's final order; or the date the alien is released from criminal confinement". (Respondent's response at p.4 quoting 8 USC Sec 1231(a)(1)(B)(i)-(iii).) We are well past that ninety day period. Mr. Erebara's final order was issued, under the Immigration Service's recitation of facts, in 1995. The Immigration Service has no right to continue to detain him without an individualized consideration of his entitlement to release.

     In deportation proceedings, an alien in generally entitled to bond. Section 242(a)(1), 8 U.S.C. section 1252(a)(1). In addition, where a final order of deportation is made the Attorney General shall have only six months from the date of the order or from completion of judicial review to effect the alien's deportation. 8 U.S.C. section 1251(c). This was certainly the case in 1995 when Mr. Erebara's deportation order became final.

6

See Kurzban's Immigration Law Sourcebook 2nd Ed., American Immigration Law Foundation (1991) at 109 citing H.R. Rep. No. 1365, 98th Cong., *reprinted in* 1952 U.S. Code Cong. & Admin. News 1653, 1713.  Indeed, before IIRAIRA, the Attorney General was directed to effect a deportable alien's departure within six months of a deportation order becoming administratively final or the final order of the court reviewing the deportation order.  INA section 242(c), 8 U.S.C. section 1252(c)(prior to the 1996 amendments).[4]

This of course is in contrast to aggravated felons who are covered by specific rules and mandatory detention. INA section 236(c)(1), 8 USC section 1226(c)(1);  Even before the passage of AEDPA and IIRAIRA, a non Legal Permanent Resident alien who was classified as an aggravated felon was required to be taken into custody without bond.  See Kurzban at 109, 111 and 114 citing 8 U.S.C. 1252(a)(2). [5] This is in contrast to all other aliens.

The Immigration service, however, is trying to classify the respondent, who never committed a crime in his life, in the same manner as criminal aliens subject to mandatory detention.  Even *Zadvydas v. Davis* concerned an alien detained pursuant to mandatory detention rules as an aggravated felon.  533 U.S. 678 (2001)(consistent with due process, aliens admitted to the United States and subject to a final order of removal may only be

---

[4] The Act later designated the "removal period" as the 90-day period following the date of the order of removal, or the date the alien is released from confinement for some reason other than the immigration process, whichever is later.  INA section 241(a)(1), 8 U.S>C. 1231(a)(1).
[5] The Immigration has a history of attempting to eliminate individualized determinations for bonds and judicial review thereof.  For example, prior to the Immigration Act of 1990, there was no bond available for an aggravated felon.  The constitutionality of the statute was successfully challenged.  Fernanadez-Santander v. Thornburgh, 751 F.Supp. 1007 (D. Me. 1990)(statute violates procedural due process); Kellmon v. District Director, 750 Supp. 625 (S.D.N.Y. 1990)(same); Joe v. Thornburgh, __ F.Supp. ___, Civ. Action No. 90-12313-Z(D. Mass. Oct.2 26, 1990)(same); Hernandez –Highsmith v. Smith, __ F.Supp.__, C90-1555-R(W.D. Wash. Nov. 15, 1990)(same);  Probert V. U.S. I.N.S., 750 F.Supp. 252 (E.D. Mich. 1990); Paxton v. U.S. I.N.S., 745 F.Supp. 1261 (E.D. Mich. 1990); Agunobi v. Thornburgh, 745 F.Supp. 533 (N.D. Ill. 1990); Hunnetti v. Thornburgh, __ F.Supp. ___, Civ. No. 90-C-4169 (N.D. Ill. Aug. 31, 1990); Leader v. Blackman, 744 F.Supp. 500 (S.D.N..Y. 1990); Yang v. U.S., __ F.Supp.___, Case No. 90-Civ-300 (D.Minn 1990).

detained under current detention provisions for a reasonable period and 'does not permit indefinite detention' by the Immigration Service. Id at 689.)

The Immigration Service tries to fit the facts into a scenario by which it can maintain the detention of this non-criminal alien without any manner of judicial review of the reasonableness of that detention. For example, without any legal support, the Immigration Service argues that "for all practical purposes, the removal period began on May 31, 2001, the date the Service took [Erebara] into custody", claiming that this was the first opportunity to effectuate the removal. There is no explanation of why the removal could not have been carried out during the seven preceding years. The respondent's address has been known to the Immigration Service since his deportation proceedings began almost ten years ago. It has remained the same since the Immigration Court ordered him removed in 1994. When the Immigration Service decided recently to pursue these long-outstanding orders of deportation, it was easily able to locate Mr. Erebara and take him into custody. Although declaring that "for all practical purposes" he could be removed now and not previously there in no explanation for why he could not have been previously removed.

The reality is that Mr. Erebara could have been taken into detention and deported but was not. The Immigration Service cannot hold Mr. Erebara in detention without a particularized determination of his right to release seven years later solely because it decides that it does not want him to be released.

Mr. Erebara should be released. He has not committed any criminal act. He is the sole support for his three American citizen children who are now suffering terribly without any pecuniary means since their father was taken into custody nearly two months ago. He wishes to return to work as a pizza-maker where he is considered an essential employee. He is highly regarded in his community and is an essential worker to his employer. He does not pose a risk of flight, nor is he by any stretch of the imagination a danger to the community.

WHEREFORE, the petitioner respectfully requests that his request for release been granted or at least that an individualized hearing be held on the merits.

Respectfully Submitted,

David E. Oltarsh
OLTARSH & ASSOCIATES, P.C.
Attorneys for the Petitioner
1375 Broadway, Suite 2102
New York, NY 10018
(212) 944-9420