```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
NAZMI EREBARA,                    :
                                  :
     Petitioner                   :        CIVIL ACTION
                                  :
     v.                           :
                                  :
KENNETH ELWOOD, ET AL.,           :        No. 02-3650
                                  :
     Respondents                  :
                                  :
```

Newcomer, S.J.                                  November   , 2002

## **O P I N I O N**

      Presently before the Court is Petitioner, Nazin Erebara's Petition for Writ of Habeas Corpus, Motion to Amend Stay, Motion for Release and the Government's response.  For the reasons as set forth below, the Petitioner's requests for relief are denied.

## **BACKGROUND**

      On January 25, 1992, Petitioner, Nazim Erebara, a Macedonian native, entered the United States illegally using a fake passport.  Eighteen months later (June 4, 1993), in an attempt to gain welfare benefits, the Petitioner approached an Immigration Naturalization Service ("INS") Office in Pittsburgh, Pennsylvania.  On July 14, 1993, the INS notified Petitioner that he was deportable from the United States by issuing an Order to Show Cause and Notice of Hearing pursuant to Sections

241(a)(1)(A) and (B) of the Immigration and Nationality Act.  The INS initiated removal proceedings because the Petitioner had gained access to the country by fraud and, in addition, overstayed his authorized time in the country.  One year later, on July 12, 1994, Petitioner applied for political asylum in the United States.  After a hearing which took place on October 5, 1994, an Immigration Judge denied Petitioner's asylum application and his application for withholding of deportation.  The Judge did, however, grant Petitioner's application for voluntary departure and gave Petitioner until June 1, 1995, to voluntarily depart or face involuntary deportation to Macedonia. Petitioner unsuccessfully appealed this ruling to the Board of Immigration Appeals ("BIA").

 Petitioner remained illegally in the United States in defiance of the Immigration Court's Order.  One year after the deadline for voluntary departure had passed, Petitioner's counsel moved to reopen his immigration proceedings.  The BIA denied his motion on January 18, 2002.[1]  Petitioner filed a motion to reconsider the Board's denial of his motion which was denied on March 20, 2002.  On May 31, 2002, the Service arrested Petitioner and prepared to deport him.  Petitioner successfully petitioned

---

[1] The Board also denied Petitioner's request to reopen proceedings in order to seek relief under the Convention Against Torture.

this Court for a stay of his deportation while the instant Petition was considered.  Said stay was issued on June 7, 2002.

## DISCUSSION

Petitioner raises three arguments in support of his Habeas Petition.  First, Petitioner argues that he is being unlawfully held while awaiting deportation.  Second, Petitioner claims he is entitled to relief known as, "cancellation of removal."  Third, Petitioner claims he should be allowed to remain in the United States as he qualifies for political asylum.

### I. Unlawful Detention

Petitioner raises his unlawful detention claim in the instant Habeas Petition as well as in a Motion for Release.  In support of this claim, Petitioner elicits numerous arguments.  Those arguments meritorious enough to warrant consideration are best characterized by three areas of analysis.  First, Petitioner argues that his detention is in violation of 8 U.S.C. § 1231.  Second, Petitioner claims that the extended detention period permitted in Zadvydas v. Davis, 533 U.S. 678 (2001), is inapplicable in this case, and, therefore, he is being held in violation of his constitutional rights.  Third, Petitioner argues that his detention violates his constitutional rights because he has not been afforded an individualized custody and bond hearing.

1.   8 U.S.C. § 1231

Section 1231(a)(1)(A) provides, "the Attorney General shall remove the alien from the Untied States within a period of 90 days (in this section referred to as the 'removal period')." The statute provides that the 90 day removal period is to begin "on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order...." In this case, the order of removal became final on October 5, 1994.  Petitioner argues that because the administrative court issued the order of removal on October 5, 1994, the 90 day removal period triggered at that time and expired in January of 1995.  Consequently, Petitioner argues he is being held in violation of § 1231 as the 90 day period has expired some seven years ago.  Petitioner's argument is based on the premise that the 90 day removal period is effective regardless of whether the deportee is detained or able to move freely about the country.

This argument is truly novel.  In fact, no case law was found, by this Court or either party, addressing such a claim. Accordingly, the Court will consider Petitioner's argument with a close examination of § 1231 itself.  There is nothing contained in § 1231 that supports Petitioner's argument other than

4

subsection (a)(1)(B) which elicits those events giving rise to the beginning of the 90 day removal period. This subsection is without any mention of the need for the deportee to be detained in order to trigger the 90 day period. Therefore, the Petitioner argues, the 90 day period triggered in 1994, when the removal order became final, and expired in early 1995.

Conversely, there is ample evidence suggesting that Congress intended the 90 day period to run only when a deportee is also a detainee. One need look no further than the title of the Section, "[d]etention and removal of aliens ordered removed," to realize Congress' intent. In addition, subsection (a)(2) states "[d]uring the removal period, the Attorney General shall detain the alien." Finally, Congress' intent in passing legislation such as this was to ensure that detainees were not held for an unreasonable amount of time while awaiting deportation. Ascribing the Petitioner's meaning to the legislation would undermine Congress' clear intent. Such a meaning would also have significantly detrimental effects on the ability of the INS to successfully deport illegal aliens. The Petitioner's meaning would not only require that the INS work out the logistics for an acceptable deportation with the deportee's home country within 90 days, but also, find, detain and deport the alien within this time period as well. Such a requirement

would appear to frustrate the deportation process to such an extent that deportations would be almost impossible to facilitate.

For these reasons, this Court is unpersuaded by Petitioner's argument and finds that the 90 day removal period does not trigger without the deportee's incarceration. Petitioner was detained on May 31, 2002, and a stay preventing Petitioner's deportation was issued by this Court on June 7, 2002. Consequently, pursuant to § 1231(a)(1)(B)(ii), the 90 day removal period shall trigger upon issuance of the Order accompanying this Opinion.

### 2.  **Extended Detention**

Petitioner argues that his extended detention violates his constitutional rights. In actuality, at the time of filing this Petition, Petitioner had been detained for little more than one week. In a bold argument, Petitioner claims that the time which accrued since his Order to Show Cause issued should be treated as detention time even though he was never actually detained during that time.

As explained in the previous section, Petitioner has not been held in excess of the 90 day period permitted by Congress. In fact, according to § 1231, the 90 day period does not begin to expire until the Order accompanying this Opinion issues.

Therefore, Petitioner's claim has no basis.  Contrary to Petitioner's claims, the Respondent's reliance on <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) is appropriate.  Although the INS has not exceeded the 90 day detention period as of yet, the <u>Zadvydas</u> case provides that it is presumptively reasonable for the INS to hold Petitioner for up to six months.  <u>Id.</u>

### 3. Individualized Custody and Bond Hearing

Petitioner argues his detention violates his Due Process Rights as he is being held without an individualized Custody and Bond Hearing.  Petitioner bases his argument on the Third Circuit's decision in <u>Patel v. Zemski</u>, 275 F.3d 299 (3d Cir. 2001).  In <u>Patel</u>, the Third Circuit found that aliens in removal proceedings could not be subject to detention without individualized review of their custody status.  Petitioner's removal proceedings have concluded and a final order removing him from the country has been issued.  Therefore, <u>Patel</u> is not applicable to the case at hand.  Petitioner's argument lacks merit.

### II. Cancellation of Removal

8 U.S.C. § 1229b permits the Attorney General to cancel the removal of an alien who is deportable from the United States if the alien:

7

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of certain criminal offenses; and

(D) establishes that removal would result in exceptional and extremely unusual hardship to relatives who are U.S. citizens or permanent resident aliens.

Petitioner claims to qualify for cancellation of removal by meeting these requirements.  However, one need look no further than the first requirement, physical presence in the United States for a period of 10 years, to realize that the Petitioner is mistaken.  Although it is true that the Petitioner has been in the country for a period of slightly in excess of 10 years, the majority of his time here cannot be considered in assessing his qualification for cancellation of removal.  Under the so called "stop-time rule," Congress specifically prevents aliens from accruing time for purposes of cancellation of removal once the alien is served with a Notice to Appear.  8 U.S.C. § 1229b(d)(1).  In Section 203(a) of the Nicaraguan Adjustment and Central American Relief Act of 1997, Congress clarified its previous explanation of the stop-time rule to include Orders to Show

Cause.  Ram v. INS, 243 F.3d 510, 515-16 (9th Cir. 2001); Angel-Ramos v. Reno, 227 F.3d 942, 947 (7th Cir. 2000).

Petitioner arrived in the country on January 25, 1992. On July 14, 1993, the INS issued an Order to Show Cause. Therefore, Petitioner has accrued only a year and a half towards the ten year requirement for cancellation of removal. Petitioner's claim for cancellation of removal fails.

Petitioner erroneously argues that retroactive application of the stop-time rule violates his constitutional rights.  First, Petitioner's claim that the stop-rule statute is being applied retroactively in this case is wrong.  This is the first and only time Petitioner has filed for cancellation of removal.  However, even if the stop-time rule were being applied retroactively, the Third Circuit has held that retroactive application of the stop-time rule does not violate an alien's constitutional rights.  Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002); Pinho v. INS, 249 F.3d 183, 189-90 (3d Cir. 2001).

In the alternative, Petitioner claims that the ten year clock should start over with "clean time" after the date the INS issued the Order to Show Cause.  The Petitioner is mistaken. Several Circuit Courts have held that the clock for continuous physical presence in the United States does not reset and start

9

again after the service of an Order to Show Cause so as to allow aliens to once again being accruing time to meet the 10 year residence requirement of § 1229b.  Afolayan v. INS, 219 F.3d 784, 788 (8th Cir. 2000); McBride v. INS, 238 F.3d 371 (5th Cir. 2001); In re Mendoza-Sandino, 2000 WL 225840 (BIA Feb. 23, 2000).

      Petitioner argues that the Attorney General has the discretion to close an alien's deportation proceedings and start over with a Notice to Appear, a process known as "repapering".  Petitioner points to his "stronger and deeper ties to this country" during his eight years in the country as an illegal alien as justification for such relief.  This Court is unimpressed by this argument.  Petitioner's stronger and deeper ties to the country are the result of his decision to defy a court order and remain in the country illegally.  In addition, Petitioner's hardship claim is likewise unconvincing.  Petitioner started a family in the country as an illegal alien with full knowledge that he was subject to removal on any given day.  Moreover, even if this Court were inclined to grant Petitioner's repapering request, it is unable to do so.  Aliens who have had a final administrative order issued are not eligible for repapering.  Sherifi v. INS, 260 F.3d 737, 739 (7th Cir. 2001).  A final administrative order has been issued here.

**III. Political Asylum**

Habeas review is strictly reserved for issues of law. Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999). "Review of factual or discretionary issues is prohibited." Id. The instant claim for political asylum is based solely on factual and discretionary issues which have been decided throughout Petitioner's dealings in the administrative process and were affirmed by the BIA on more than one occasion. To this end, not one meritorious legal issue was raised for this Court to consider. Petitioner did mention a possible ineffective assistance of counsel claim. However, Petitioner has in no way come close to arguing, much less meeting, the requirements for proving such a claim. Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 1999); Matter of Lozada, 19 I.&N. Dec. 637, 1998 WL 235454 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1988). Instead, Petitioner inappropriately attempts to reargue his case for political asylum before this Court. Even if this Court were inclined to grant the Petitioner political asylum, it is without the authority to do so.

In addition, Petitioner has failed to exhaust those remedies offered to him under 8 U.S.C. § 1252. Specifically, Petitioner failed to appeal the BIA's decisions concerning his asylum claim to the Circuit Court. Consequently, this Court is

11

without jurisdiction to consider such a claim.  <u>Marrero v. UNS</u>, 990 F.2d 772, 778 (3d Cir. 1993).

    AN APPROPRIATE ORDER WILL FOLLOW.

                                                             _____
                                                             Clarence C. Newcomer, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAZMI EREBARA, | : | |
| | : | |
| Petitioner | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH ELWOOD, ET AL., | : | No. 02-3650 |
| | : | |
| Respondents | : | |
| | : | |

**O R D E R**

AND NOW, this       day of November, 2002, upon consideration of Petitioner's Petition for Writ of Habeas Corpus (Document 1) and Respondent's response, it is hereby ORDERED that said Petition is DENIED for the reasons as set forth in the accompanying Opinion.

It is further ORDERED as follows:

1) Petitioner's Motion to Amend a Previously Issued Stay of Deportation and for an Order Releasing the Petitioner from Incarceration (Document 9) is DENIED.

2) This Court's June 7, 2002, Stay of Deportation is hereby LIFTED.

3) The Immigration and Naturalization Service shall take note of this Order and Opinion and commence deportation proceedings accordingly.  This Court is concerned with the

Service's failure to carry out the deportation order in this matter earlier. The Service should be aware that the 90 day deportation period provided by 8 U.S.C. § 1231 commences upon issuance of this Order. The Service shall make every effort to comply with that congressionally imposed deadline.

    AND IT IS SO ORDERED.

    _____
    Clarence C. Newcomer, S.J.